U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR 25 2016
CLERK, U.S. DISTRICT COURT
By ________
Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ROGELIO GUEVARA,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:15-CV-676-A** |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **ACTING COMMISSIONER OF SOCIAL** | § | |
| **SECURITY,** | § | |
| **DEFENDANT.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Rogelio Guevara ("Guevara") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In July 2012, Guevara protectively filed his application for benefits, alleging that his disability began on

January 1, 2012.[1] (Transcript ("Tr.") 15, 200-01.) His application for benefits was denied initially and on reconsideration. (Tr. 15, 77-78, 81-90.) The ALJ held a hearing on March 4, 2014 and issued a decision on April 4, 2014, finding that Guevara was not disabled because he was capable of performing his past relevant work as a warehouse worker and a mail/file clerk. (Tr. 15-25, 31-76.) On July 13, 2015, the Appeals Council denied Guevara's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-3.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq*., and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404 (disability insurance). The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt.

---

[1] At the hearing before the ALJ, Guevara's attorney requested that his alleged onset date of disability be amended to January 1, 2013. (Tr. 15; *see* Tr. 48-51.) The ALJ granted such request. (*Id.*)

404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUES

In his brief, Guevara presents the following issues:

A. Whether the ALJ erred in his treatment of the opinions of Guevara's treating physician, Ardashes Mirzatuny, M.D. ("Dr. Mirzatuny") and Guevara's treating nurse practitioner, Laura Settlage ("Nurse Practitioner Settlage");[2]

B. Whether the ALJ erred as a matter of law in failing to contact the treating providers for clarification of their opinions; and

C. Whether the ALJ erred as a matter of law in his residual functional capacity ("RFC") assessment.

(Plaintiff's Brief ("Pl.'s Br.") at 5, 15-22.)

## IV. ALJ DECISION

In his April 4, 2014 decision, the ALJ found that Guevara met the insured status requirements of the SSA through December 31, 2016 and that Guevara had not engaged in substantial gainful activity since January 1, 2013, the amended onset date of Guevara's disability. (Tr. 17.) The ALJ further found that Guevara suffered from the severe impairment of schizophrenia/schizoaffective disorder. (Tr. 17.) Next, the ALJ held that neither Guevara's impairment, nor combination of impairments, met or equaled the severity of any impairments in the Listing. (Tr. 18-19.) As to Guevara's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: occasional interaction with supervisors, co-workers and the general public. The claimant retains the ability to understand, remember and carry out simple job instructions and tasks.

(Tr. 19 (emphasis omitted).)

---

[2] Guevara broke this issue down into three separate issues, which the Court will address in section V.A.

Next, the ALJ found that Guevara was capable of performing his past relevant work as a warehouse worker and mail/file clerk. (Tr. 23-25.) Consequently, the ALJ concluded that Guevara was not disabled. (Tr. 25.)

## V. DISCUSSION

### A. Treating Physician Issues

Guevara raises several issues in his brief regarding the ALJ's failure to properly analyze the opinions of his treating healthcare providers, Dr. Mirzatuny and Nurse Practitioner Settlage. (Pl.'s Br. at 5, 15-18.) Specifically, Guevara claims that the ALJ: (1) erred in providing no explanation for his rejections of the opinions and assessments of Dr. Mirzatuny and Nurse Practitioner Settlage in the February 27, 2014 Medical Assessment of Ability to Do Work-Related Activities (Mental) ("Medical Assessment")[3] (Pl.'s Br. at 15-17); (2) erred in failing to articulate adequate reasons for discrediting Dr. Mirzatuny and Nurse Practitioner Settlage's

[3] The Medical Assessment was signed by both Dr. Mirzatuny and Nurse Practitioner Settlage. (Tr. 776.) In the Medical Assessment, Dr. Mirzatuny and Nurse Practitioner Settlage opined, *inter alia*, that Guevara had some loss of ability to perform the named activity but still capable of consistently performing it independently, appropriately and effectively in the following areas: (1) the ability to apply commonsense understanding to carry out simple one or two-step instructions and detailed but uninvolved written or oral communications; (2) the ability to act appropriately with the general public; and (3) the ability to make simple work-related decisions, ask simple questions or request assistance, and accept instructions and respond appropriately to criticism from supervisors; and the ability to respond appropriately to changes in a routine work setting. (Tr. 774-75). In addition, they opined that Guevara had "[s]ubstantial loss of ability to perform the named activity in regular, competitive employment and, at best, could do so only in a sheltered work setting where special considerations and attention are provided in the following areas: (1) ability to demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances; (2) maintain concentration for an extended period (being two hours); (3) maintain attention/stay on task for an extended period (being two hours); (4) ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (5) ability to cope with normal work stress (even those inherent in low stress jobs) without exacerbating pathologically based symptoms; and (6) ability to finish a normal work week without interruption from psychologically based symptoms. (*Id.*) Furthermore, Dr. Mirzatuny and Nurse Practitioner Settlage opined that Guevara had extreme loss of ability to perform at a consistent pace without an unreasonable number and length of rest period/breaks in regular, competitive employment and in a sheltered work setting and could do so only to meet basic needs at home. (Tr. 774.) They further indicated that Guevara's impairment, symptoms, or treatment would cause Guevara to be absent from work more than four days per month. (Tr. 776.)

opinions in the Medical Assessment (Pl.'s Br. at 17); and (3) erred in not according any weight to their opinions and failing to consider the factors set forth in 20 C.F.R. 404.1527(d) in rejecting their opinions in the Medical Assessment (Pl.'s Br. at 18).

Both Dr. Mirzatuny and Nurse Practitioner Settlage are employed by Metrocare Services and the majority of Guevara's medical records are from Metrocare Services. A review of these records indicates that Guevara was treated at Metrocare Services since at least 2004 and was seen by numerous doctors and other medical staff during his multiple visits. The ALJ specifically reviewed multiple examination records of Guevara at Metrocare Services, stating,

> The claimant has a history of schizoaffective disorder, for which he has been treated at Dallas MetroCare since at least 2004. Progress notes through 2011 reflect that the claimant was doing well on his medications, with some adjustments, and with skills training. The claimant had exacerbations of his symptoms when he was not taking his medications as prescribed. He was able to return to work on a part-time basis in November 2011. Progress notes in 2012 reflect that the claimant's mood remained stable and he reported he was doing well with no symptom exacerbations.
>
> . . . .
>
> On February 18, 2013, the claimant reported his mood was stable. He denied psychosis. He reported side effects of dry mouth, but stated he did not want to change his medication. The claimant was seen on April 5, 2013 and presented with a stable and pleasant mood. He continued to report dry mouth. The claimant was instructed to reduce Haldol and start Abilify. On May 1, 2013, the claimant reported his insurance would not cover Abilify. He presented with a stable mood and no psychosis. The claimant was prescribed Seroquel.
>
> The claimant was seen on June 12, 2013 and reported he was doing well with his new medication. He stated he was sleeping better. The claimant's mood was stable. He was instructed to decrease Haldol and increase the dosage of Seroquel. On August 7, 2013, the claimant reported he was doing fine and was having no problems with symptoms. His mood was stable. The claimant was alert and fully oriented. His memory was intact and attention was normal. He was instructed to continue reducing the dosage of Haldol.

> On September 14, 2013, the claimant reported to the nurse that he was doing well and continuing to work part-time. The claimant was seen on October 2, 2013 and reported no problems with symptoms. His mood was stable and he denied psychosis. It was noted the claimant continued working part-time. On November 22, 2013, the claimant reported feeling "pretty good". He stated the medications were working very well for him and his mood was stable. The claimant was continued on his medications.
>
> Notes dated January 29, 2014 and February 24, 2014 reflect the claimant was able to return to work.

(Tr. 19-20 (internal citations omitted).) As to Dr. Mirzatuny and Nurse Practitioner Settlage's opinions, the ALJ stated:

> On February 27, 2014, Laura Settlage, PMHNP-BC completed and Dr. Ardashes Mirzatuny signed a Medical Assessment of Ability to do Work-Related Activities (Mental) ["Medical Assessment'] (Ex. 16F). They opined that the claimant had an extreme loss of ability to perform at a consistent pace without an unreasonable number and length of rest period/breaks. They stated he had a substantial loss of ability to: demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances; maintain concentration for an extended period (being two hours); maintain attention/stay on task for an extended period (being two hours); get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; cope with normal work stress (even those inherent in low stress jobs) without exacerbating pathologically based symptoms; and finish a normal work week without interruption from psychologically based symptoms. They further opined he had some loss of his ability to: apply commonsense understanding to carry out simple one or two-step instructions; apply commonsense understanding to carry out detailed but uninvolved written or oral instructions; act appropriately with the general public; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in a routine work setting. No limitations were noted in the claimant's ability to maintain personal appearance or behave in an emotionally stable manner.
>
> The claimant's diagnosis was schizoaffective disorder. His symptoms included difficulty thinking/confusion, pressure speech, psychomotor agitation/retardation, flight of ideas, racing thoughts and hallucinations/delusions. They opined the claimant would likely be absent from work more than four days per month due to his impairment/symptoms or treatment.

> The undersigned notes that this assessment of the claimant's ability to perform the mental requirements of work activity is not only unsupported by other medical evidence of record but by the evidence provided by these sources as well (the doctor's opinion contrasts sharply with the other evidence of record, which renders it less persuasive). Based upon progress notes, this appears to be an exaggeration for the period starting with the claimant's amended alleged onset date. The claimant has repeatedly stated that he was doing okay or doing fine. He has also denied symptoms or any exacerbations of symptoms. Providers did **not** opine any different in progress notes either. These progress notes also reflect that the claimant has been able to continue working part-time. Accordingly, no weight is given to this opinion regarding the claimant's ability to perform the mental requirements of work activity (Social Security Ruling 96-2p). Additionally, this opinion is regarding an issue left solely to the Commissioner of the Social Security Administration (Social Security Ruling 96-5p). Further, the opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion.

(Tr. 20-21 (emphasis in original).)

Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. § 404.1527(b), (d)(1). Because the determination of disability always remains the province of the ALJ, he can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790. Conclusory statements to the effect that the claimant is disabled or

unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton*, 209 F.3d at 453. Under the statutory analysis, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) *only* if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the

claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

As to Nurse Practitioner Settlage, the Court notes that nurse practitioners are not acceptable medical sources and, thus, cannot be considered a treating source. *See* 20 C.F.R. 404.1513(a), (d)(1); *Patrick v. Astrue*, No. 3:10-CV-371-DPJ-FKB, 2011 WL 3882818, at *3 (S.D. Miss. Aug. 15, 2011) ("Because a nurse practitioner is not an acceptable medical source, he or she cannot be considered as a treating source). Thus, the ALJ did not err in failing to treat Nurse Practitioner Settlage's opinions as the opinions of a treating physician.

The Court notes, however, that the ALJ "*may* also use evidence from other sources to show the severity of [the claimant's] impairment and how it affects [his] ability to work." 20 C.F.R. § 404.1513(d) (emphasis added). A nurse practitioner is listed as an "other source." *Id.* SSR 06-03p indicates that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). While the ALJ *can* apply the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c), "[e]ach case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and

a weighing of all the evidence in that particular case." *Id.* at *5. "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

The ALJ's opinion in this case shows that he did specifically consider Nurse Practitioner Settlage's opinions, as he described her and Dr. Mirzatuny's opinions in the Medical Assessment and determined it should be given "no weight." (Tr. 21.) In addition, as set forth above, the ALJ gave specific reasons why he rejected such opinions. Thus, contrary to Guevara's claims, the ALJ properly evaluated Nurse Practitioner Settlage's opinions and articulated appropriate reasons for assigning them no weight.

As to Dr. Mirzatuny,[4] the ALJ did not err in failing to give controlling weight to his opinions in the February 27, 2014 Medical Assessment. While Guevara disagrees with the ALJ's reasons for rejecting Dr. Mirzatuny's opinions in the Medical Assessment, there is substantial evidence in the record that supports the ALJ's decision. (Tr. 19-23.) As stated above, the ALJ may give no weight to a treating physician's opinion when there is a good cause for doing so. *Newton*, 209 F.3d at 455-456. In this case, it is clear that the ALJ thoroughly reviewed and considered Dr. Mirzatuny's opinions in such Medical Assessment but ultimately

[4] The Defendant argues that "Plaintiff mischaracterizes Dr. Mirzatuny and Ms. Settlage as 'treating physicians'" as "Dr. Mirzatuny never examined Plaintiff and Ms. Settlage examined Plaintiff only once." (Defendant's Brief at 7.) While the Court agrees that it is unclear from the record whether Dr. Mirzatuny actually ever examined Guevara, he is listed a few times in the records from Metrocare Services as either the doctor associated with "Billing" or as the "Attend/Clinician." (*See, e.g.*, Tr. 337, 365, 424-25, 457, 559, 665, 692, 721-723, 727, 736.) Thus, the Court, giving Guevara the benefit of the doubt, will consider without deciding that Dr. Mirzatuny is a treating physician.

determined to give them no weight as they were unsupported and inconsistent with the majority of Dr. Mirzatuny's own treatment notes[5] and the treatment notes from other providers at Metrocare Services. The other evidence in the record indicated that Guevara repeatedly stated he was doing okay or fine and denied symptoms or any exacerbations of symptoms. (Tr. 21.) In addition, the progress notes supported Guevara's statements and even indicated that Guevara had continued working part time. (Tr. 21.)

As to Guevara's arguments regarding the factors set forth in 20 C.F.R. § 404.1527(c), the Court finds that the ALJ performed the required analysis prior to giving no weight to Dr. Mirzatuny's opinions in the Medical Assessment. To begin with, as to factors one and two under which the ALJ evaluates the examining and treatment relationship between Guevara and Dr. Mirzatuny, the ALJ clearly recognized that Guevara had been treating at Dallas Metrocare Services since 2004, where Dr. Mirzatuny practiced. A review of the records indicates that Guevara saw a variety of doctors and healthcare providers at Metrocare Services and the ALJ went through the examination and treatment notes of such providers, including those referencing Dr. Mirzatuny, beginning in 2004. (Tr. 19-22; *see* 20 C.F.R. §§ 404.1527(c)(1), (2).) As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of the physician's opinion, as well as any other factors that "tend to support or contradict the

[5] *See, e.g.*, Tr. 559-60 (examination notes dated October 2, 2008 (where Dr. Mirzatuny was listed under "Billing") that indicate that Guevara reported he was fine, currently working, and Guevara had clear and coherent speech and goal directed thoughts), 665-66 (examination notes dated March 16, 2012 (where Dr. Mirzatuny was listed under "Billing") that indicate Guevara reported that "he is doing well and has no issues at this time"), Tr. 721-23 (examination notes dated November 22, 2013 (where Dr. Mirzatuny was listed as the "Attend/Clinician") that indicate Guevara reported he was feeling pretty good and the medicine was working "very good" for him), Tr. 727-728 (examination notes dated September 4, 2013 (where Dr. Mirzatuny was listed under "Billing") that indicate Guevara reported he was doing good and working part time), Tr. 736 (examination notes dated May 29, 2013 (where Dr. Mirzatuny was listed under "Billing") that indicate Guevara reported he was doing "ok").

opinion," the ALJ, as set forth above, noted that Dr. Mirzatuny's opinions in the Medical Assessment were not consistent with the other evidence in the record, including Dr. Mirzatuny's own treatment and examination notes. (Tr. 19-22; *see* 20 C.F.R. §§ 404.1527(c)(3), (4), (6). As to factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). However, in his brief, Guevara does not assert that Dr. Mirzatuny is a specialist and, as such, this factor is not relevant. (*See* Pl.'s Br. at 17-18.) Because the ALJ properly considered the opinions of Dr. Mirzatuny, remand is not required.

**B. Duty to Recontact Treating Physicians**

In his brief, Guevara, citing 20 C.F.R. § 404.1520b, also claims that the ALJ erred in failing to contact the treating providers for clarification of their opinions. (Pl.'s Br. at 19-20.) However, under the regulation cited by Guevara, the decision to recontact a treating physician, psychologist, or other medical source is discretionary. *See* 20 C.F.R. 404.1520b(c). The regulation states that an ALJ ***may*** recontact the treating physician if the evidence is inconsistent or if the ALJ has insufficient evidence to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520b(c). In this case, as described above and in section V.C., *infra*, the evidence was more than sufficient to allow the ALJ to make a proper assessment of Guevara's impairment and claim for disability. Consequently, the ALJ did not err in failing to recontact Dr. Mirzatuny.

**C. RFC Determination**

Guevara also argues generally that the ALJ erred in his RFC assessment of Guevara. (Pl.'s Br. at 20-22.) Specifically, Guevara claims that the ALJ ignored "significant portions of

Guevara's medical history when propounding his single substantive interrogatory to the [vocational expert ("VE")], rather than exploring all the evidence that could affect his RFC." (Pl.'s Br. at 20.) Guevara claims that the VE, after being read the entire Medical Assessment signed by Dr. Mirzatuny, answered that such an assessment would preclude competitive employment. (Pl.'s Br. at 21-22; *see* Tr. 71-74.)

RFC is what an individual can still do despite his limitations.[6] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel,* 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do, but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[7] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3-5. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

---

[6] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[7] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (superseded only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

In this case, the ALJ, as set forth above, found that Guevara had the RFC to perform a full range of work at all exertional levels but he was limited to occasional interaction with supervisors, co-workers, and the general public and could understand, remember, and carry out simple job instructions and tasks. (Tr. 19.) In making such a RFC determination, the ALJ considered, *inter alia*, the following evidence in the record: (1) his history of schizoaffective

disorder and examination treatment notes and records from Metrocare Services, beginning in 2004 (as set forth above) (Tr. 19-21); (2) a September 2012 psychological consultative evaluation in which S.A. Somodevilla, Ph.D. ("Dr. Somodevilla"), diagnosed Guevara with "schizophrenia, paranoid type" and reported that Guevara: (a) exhibited no evidence of thought disorder, (b) was able to focus with a minimum of distractibility, (c) had a flat mood and his expression never changed; and (d) did not appear to have impaired memory (Tr. 19; *see* Tr. 387-89); (3) Guevara's testimony at the hearing before the ALJ and several function reports completed by Guevara (Tr. 22-23); (4) the testimony of Guevara's sister (Tr. 23); and (5) the Psychiatric Review Technique and Mental Residual Functional Capacity Assessment performed in September 2012 by State Agency Medical Consultant Charles Lankford, Ph.D.[8] (Tr. 23; *see* Tr. 391-408.)

Based on the evidence set forth above as well as other evidence in the record, the ALJ's RFC determination finding that Guevara is capable of the full range of work at all exertional levels with certain limitations is supported by substantial evidence. The ALJ properly discussed the evidence in the record in making the RFC determination, explained the reasoning for the RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC assessment that were most supported by the record. *See, e.g.*, *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Consequently, the ALJ did not err in his RFC determination and remand is not required.

---

[8] While the ALJ does not specifically identify these reports by names, the ALJ does mention that he, in accordance with SSR 96-6p, considered "that the concluding opinions pertaining to disability contained herein are in contrast to the ones reached at the initial and reconsideration levels of disability determination." (Tr. 23.) Because SSR 96-6p deals with findings by State Agency Medical and Psychological Consultants, it is clear he considered such opinions.

As to Guevara's claim that the ALJ ignored the VE's testimony to the effect that if Guevara suffered from the impairments to the extent set forth by Dr. Mirzatuny in the Medical Assessment then Guevara would be precluded from competitive employment, the Court first notes that the ALJ is permitted to *consult* a VE when determining at Step Four whether the claimant could perform his past relevant work. *See, e.g.*, *Adams v. Astrue*, No. 08-0135, 2009 WL 774845, at *7 (W.D. La. Mar. 24, 2009) ("At Step Four of the sequential evaluation process, the ALJ employed a [VE] to find that [the claimant] was able to return to her past relevant work . . . ."); *Pierce v. Astrue*, No. 07-1294, 2008 WL 4373036, at *13 (E.D. La. Sept. 22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony."). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the specific skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). At Step Four, the claimant bears the burden of showing that she cannot perform her past relevant work. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "[T]he hypothetical question posed to the vocational expert by the ALJ must 'incorporate reasonably all disabilities of the claimant recognized by the ALJ.'" *Jones v. Astrue*, 228 F. App'x 403, 408 (5th Cir. 2007).

In this case, the ALJ included all limitations that he had found in the RFC determination in the hypothetical question to the VE. (Tr. 19, 69.) The VE then testified that an individual limited to such work could perform Guevara's past relevant work as a warehouse worker or a mail/file clerk. (Tr. 69.) The ALJ relied on this portion of the VE's testimony in finding at Step Four that Guevara could perform his past relevant work in these jobs. (Tr. 23-24.)

While the VE, when questioned further by Guevara's attorney, did testify that a person that suffered from the impairments and limitations as described by Dr. Mirzatuny in the Medical Assessment would be precluded from competitive employment (Tr. 71-74), the ALJ did not incorporate such limitations into the RFC as he did not find they were supported by the majority of the evidence in the record, as set forth above. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See*, *e.g.*, *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the VE need only reasonably incorporate the limitations accepted by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 436 (no reversible error if the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations.) Because, as stated above, the ALJ's RFC determination was supported by substantial evidence and the ALJ's hypothetical to the VE "tracked" the RFC assessment, the ALJ did not commit error. *See Berry v. Astrue*, No 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in* 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue*, No 3:10-CV-1413-BK, 2011 WL 540299, at *6–7 (N.D. Tex. Feb. 11, 2011) (holding that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments). Consequently, remand is not required.

**RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

**NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 9, 2016** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 25, 2016.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv